**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Daniel Veloz | CASE NUMBER |
| PLAINTIFF(S) | 2:16-cv-05982-SVW-GJS |
| v. | |
| Sears, Roebuck and Co. | **JUDGMENT ON THE VERDICT FOR DEFENDANT** |
| DEFENDANT(S). | |

This action having been tried before the Court sitting with a jury, the Honorable Stephen V. Wilson, District Judge, presiding; the issues having been duly tried and the jury having duly rendered its verdict.

IT IS ORDERED AND ADJUDGED that the plaintiff(s):

Daniel Veloz

take from the Defendant

Sears, Roebuck and Co.

consistent with the Court's attached Order. Judgment on the verdict is entered for the Defendant on the first, second, third, fourth, eighth, ninth, and tenth causes of action. Judgment as a matter of law is entered for the Defendant on the fifth and sixth causes of action. Judgment as a matter of law is entered for the Plaintiff on the seventh cause of action.

Damages, costs, and fees shall be determined by a later stipulation or motion.

Clerk, U. S. District Court

Dated: July 13, 2017

By *Paul M. Cruz*
Deputy Clerk

At: Los Angles, California

cc: Counsel of record

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** IN CHAMBERS ORDER ALLOWING JUDGMENT ON THE VERDICT AND DIRECTING THE ENTRY OF JUDGMENT AS A MATTER OF LAW [127].

Plaintiff Daniel Veloz ("Plaintiff") brought this action against Defendant Sears, Roebuck and Co. ("Defendant" or "Sears"), for various causes of action related to his termination.[1] The Plaintiff worked at Sears as a Loss Prevention Associate, where his job was to address loss prevention issues, such as apprehending shoplifting suspects. While on duty, the Plaintiff was injured when a shoplifting suspect stabbed him outside of the store when the Plaintiff ran outside. The Plaintiff then went on disability leave while healing from the stab wounds. The Plaintiff returned to work but was terminated by Sears shortly thereafter. The Plaintiff contended that he was terminated as the result of his disability or his medical leave, while Sears maintained that he was fired for violating its policy regarding the apprehension of shoplifters.

---

[1] Specifically, the Plaintiff brought ten causes of action against the Defendant: (1) discrimination on the basis of disability; (2) failure to take all reasonable steps to prevent discrimination; (3) failure to accommodate disability; (4) failure to engage in the interactive process; (5) wrongful termination of employment on the basis of disability; (6) intentional infliction of emotional distress; (7) failure to provide employment records on request; (8) interference with right to medical leave under the California Family Rights Act, Gov't Code §12945.2(t); (9) retaliation for taking leave under the California Family Rights Act; and (10) discrimination based on taking leave under the California Family Rights Act. This Order will resolve all of the remaining disputed causes of action, either by allowing judgment on the verdict or by directing the entry of judgment as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

After the Court denied Defendant's summary judgment motions, this case proceeded to a jury trial on June 27, 2017. Dkt. 120. After the conclusion of the evidence and the closing arguments by the parties, both parties orally submitted motions for judgment as a matter of law.[2] The Court did not grant either motion and the action was submitted to the jury. The jury was given seven questions to answer on the case, allowing the jury to find for either the Plaintiff or the Defendant on the relevant causes of action.[3] Dkt. 127. On June 29, 2017, the jury returned a verdict for the Defendant on the first six questions and a verdict for the Plaintiff on the seventh question.

Based on the answers of the jury and the legal analysis contained in this Order, the Court now ALLOWS judgment on the verdict for the Defendant on the first, second, third, fourth, eighth, ninth, and tenth causes of action; DIRECTS the entry of judgment as a matter of law for the Defendant on the fifth and sixth causes of action, which is the intentional infliction of emotional distress claim; and DIRECTS the entry of judgment as a matter of law for the Plaintiff on the seventh cause of action for failure to provide employment records on request.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are fairly straightforward and for the most part are undisputed by the parties. The central dispute of this action was whether the true motivation for the Defendant's termination of the Plaintiff was unlawful discrimination on the basis of his disability or medical leave, or whether the true motivation was the Plaintiff's violation of a store policy. The factual disputes in this case have now been resolved by the jury and its verdict. Therefore, the Court includes a summary of the facts of this case and the areas of dispute for convenience's sake.

### A.   The Plaintiff and His Training

The Defendant is a national retailer of consumer products. At all relevant times, the Plaintiff

---

[2] The Defendant also provided a written copy of its motion for judgment as a matter of law to the Court.
[3] Although there were ten causes of action brought by the Plaintiff, only seven questions were submitted to the jury. The Defendant admitted to liability on the Plaintiff's seventh cause of action for failure to provide employment records on request. The Plaintiff's fifth cause of action for wrongful termination on the basis of disability was duplicative of the first cause of action for discrimination on the basis of disability. The Plaintiff's ninth and tenth causes of action for retaliation for taking medical leave and discrimination based on taking medical leave were combined into a single question for the jury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

worked for the Defendant as a Loss Prevention Associate at a store located in Pasadena, California. He began his employment on May 2, 2014, at which time he acknowledged his receipt of the Sears Employee Handbook. The acknowledgement provides, "I understand and agree to abide by and be bound by the rules, policies, and standards set forth in the Handbook and Company policy."

As part of his employment, the Plaintiff received training on how to perform his job duties. This training included learning about Sears' anti-discrimination and anti-retaliation policies, as well as safety training specifically designed for Loss Prevention Associates. The Plaintiff performed a series of online trainings as well as on-the-job trainings. He learned how to detect and apprehend shoplifters. He learned how to keep a safe distance when observing a suspect. Importantly, he learned that he should never chase a shoplifting subject and that he could not attempt to apprehend a suspect past the store's boundaries, which he believed to be the sidewalk outside of the store. In other words, the Plaintiff understood from his training that if a suspect passed the established boundaries of the store, he was supposed to discontinue the apprehension of the shoplifter. These policies were put in place by Sears in order to ensure that safety came first.

### B. The Incident Involving the Shoplifter and Plaintiff's Resulting Injury

On April 20, 2017, Plaintiff was stabbed by a shoplifter. That evening, he was monitoring the interior of the store through the video camera feed when he was alerted to the presence of a possible shoplifter. The Plaintiff alerted his co-worker and fellow Loss Prevention Associate, Erick Villanueva, that Plaintiff had noticed a suspicious man in the store. Villanueva then observed the suspect in person while the Plaintiff continued to observe the suspect from the surveillance monitors. The Plaintiff told Villanueva that he had seen the suspect take two drills from a display.

The suspect then exited the store without paying for the drills. Villanueva followed the suspect. The Plaintiff then ran out of the Merchandise Pick Up doors, although he admitted that he knew that Villanueva was supposed to apprehend the suspect.[4] The Plaintiff then encountered the suspect and identified himself as a Sears Loss Prevention Associate, telling the suspect to come back to the Sears offices with him. Instead, the suspect stabbed the Plaintiff in his left and right arm using a knife, injuring the Plaintiff significantly. The Plaintiff was taken to a hospital and treated for his injury.

---

[4] The Defendant contended during trial that the Plaintiff ran out of the store in order to apprehend the suspect, while the Plaintiff maintained at trial that he ran out of the store in order to confirm Villanueva's safety.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

The Plaintiff informed Sears in a written statement that he had been stabbed on Sears Way, beyond the sidewalk outside of the store.

### C. The Plaintiff's Subsequent Medical Leave and Termination

After the Plaintiff's injury, the Defendant gave him a leave of absence from April 21, 2015, until he returned to work on May 19, 2015. During his leave, the Plaintiff was in communication with Sears' Workers' Compensation carrier, Sedgwick. On May 15, 2015, the Plaintiff's doctor indicated that the Plaintiff could return to work with certain restrictions. The Plaintiff never contacted Sears' Centralized Leave Management Team to request additional leave beyond what he was granted. He also did not contact anybody at the Sears Human Resources department to request additional leave, and did not submit any paperwork asking for a further leave of absence. However, he does contend that he told Sedgwick that he was not ready to return to work and requested a further leave of absence from them.

Following the April 20 incident, an employee at the store notified Jeff Young, an employee of Sears responsible for investigating these types of matters, about the incident and the nature of the Plaintiff's injury. On April 21, 2015, Young visited the Pasadena location to review the surveillance video and spoke with Villanueva about the incident. Villanueva also provided a witness statement. Villanueva stated that he began running in the direction of the suspect, but when the suspect ran into the parking lot, he turned around and went back to recover the merchandise. That Villanueva retrieved the drills was confirmed via the surveillance video. As a result of his investigation, Young concluded that the Plaintiff had not used good judgment when he left the boundaries of the store and confronted the suspect.

On May 19, 2017, the Plaintiff returned to work with restrictions. The restrictions listed by the Plaintiff's doctor included: no lifting or carrying, no pushing or pulling, no climbing, no crawling, no reaching above shoulder, no reaching outward, no handling/fingering, and no driving. The restrictions allowed the Plaintiff to bend, squat/kneel, twist/turn, stand, walk, or sit frequently. The Defendant contended during trial that the Plaintiff never communicated to anyone at Sears that his restrictions were not being respected. The Defendant also contended that the Plaintiff never was forced to participate in restricted activities. However, the Plaintiff again contended that he informed the Defendant's agent, Sedgwick, that he was not yet ready to return to work due to his disability and that he needed additional leave. He also contended that he never received the modified duties that were promised to his doctor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

Instead, he returned to his normal duties, which required him to hold, carry, and lift objects in addition to performing apprehensions, which caused him discomfort and pain. He testified during trial that he spent time in the video room after his return to work, but that he was also asked to perform activities that cause him pain and should have been restricted by the doctor's note.

After the Plaintiff returned to work, he provided three statements regarding the incident. These statements largely confirm the preceding version of events, including that the Plaintiff was stabbed on the street beyond the store's sidewalk. The Plaintiff confirmed that he understood Sears' Apprehension Policy, including that stops should not be made outside of the store's boundary.

Young, together with Human Resources and Tess Viall, the Store Manager, determined that the Plaintiff should be terminated. The reason given for the termination was that the Plaintiff violated the store's policy prohibiting Loss Prevention personnel from pursuing suspects beyond a store's boundary. On June 5, 2017, the Plaintiff was informed by Viall that he was being terminated for violating Sears' policies, although the Plaintiff did not recall if he was told that he had specifically violated the boundary policy.

The Plaintiff disputed during trial that he was terminated because he violated the boundary policy. In fact, he maintained during trial that he did not actually violate the boundary policy, which only forbids store personnel from leaving the boundary in order to apprehend a shoplifter. The Plaintiff repeatedly emphasized to the jury that he left the store when he lost contact with his partner, Villanueva, and therefore sought to check on his partner's safety. Then, while trying to ascertain his partner's whereabouts, he was run over by the fleeing shoplifter and eventually stabbed. Therefore, Plaintiff's counsel argued during trial that a violation of the boundary policy could not have been the reason for his termination because he never in fact violated the policy. Plaintiff's counsel also emphasized that Villanueva was not terminated as a result of the incident even though he also violated several of the Defendant's policies, including the boundary policy.

The Plaintiff also contended that Young acted improperly during the course of his investigation. He argued that Young concluded that Plaintiff had exercised bad judgment and violated the boundary policy only after he had heard that the Plaintiff had required surgery but before actually speaking with the Plaintiff. The Plaintiff also contended that Young directed Sears employees to interfere with the Plaintiff's medical leave and rush him back to work. This plan included contacting the Plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

doctor directly, a violation of Sears policy, and persuading the Plaintiff's doctor to allow the Plaintiff to return to work ahead of schedule. The Plaintiff argued that this plan led to the Plaintiff's medical provider removing the Plaintiff's cast early.

Finally, the Plaintiff contended that no one at Sears ever began a dialogue with him about accommodating his disability. No documentation of any interactive process occurred. He was terminated shortly after returning from his disability leave.

### D. <u>The Jury Verdict</u>

Jury trial began in this matter on June 27, 2017. The submission of the evidence and the parties' closing arguments were concluded on June 29, 2017. After the evidence was submitted, both parties moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The Court did not grant either motion, and the case went to the jury.

The verdict form contained seven questions, with two sub-parts depending on how the jury answered the preceding question.[5] For each question, the jury was asked whether they found for the Plaintiff or the Defendant. Each question and the jury's answer are stated below.

Question #1a, which corresponded with the Plaintiff's first cause of action, stated: "The Plaintiff claims that the Defendant wrongfully discriminated against him based on his physical disability. On this claim, we find for the Defendant."

Question #2, which corresponded with the Plaintiff's second cause of action, stated: "The Plaintiff claims that the Defendant failed to prevent discrimination based on his disability. On this claim, we find for the Defendant."

Question #3a, which corresponded with the Plaintiff's ninth and tenth causes of action, stated: "The Plaintiff claims that the Defendant retaliated or discriminated against him for taking medical leave. On this claim, we find for the Defendant."

---

[5] Based on the jury's answers to the questions, neither subpart on the verdict form was necessary for the jury to answer, and the jury did not provide any answer to those subparts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

Question #4, which corresponded with the Plaintiff's eight cause of action, stated: "The Plaintiff claims that the Defendant interfered with his legal right to receive medical leave. On this claim, we find for the Defendant."

Question #5, which corresponded with the Plaintiff's third cause of action, stated: "The Plaintiff claims that the Defendant failed to reasonably accommodate his disability. On this claim, we find for the Defendant."

Question #6, which corresponded with the Plaintiff's fourth cause of action, stated: "The Plaintiff claims that the Defendant failed to engage in a good-faith interactive process with him to determine whether it would be possible to implement effective reasonable accommodations. On this claim, we find for the Defendant."

Question #7, which corresponded with the Plaintiff's sixth cause of action for intentional infliction of emotional distress, stated: "The Plaintiff claims that the Defendant committed outrageous conduct and intended to cause him emotional distress or acted with reckless disregard of the probability that the Plaintiff would suffer emotional distress. On this claim, we find for the Plaintiff."

After the verdict was read, the Court asked the parties for their interpretation of the verdict, given that the jury did not find any discrimination or retaliation yet found that the Defendant had committed outrageous conduct. Plaintiff's counsel argued that the intentional infliction of emotional distress claim should be allowed to proceed to the damages phase of trial, while Defendant's counsel argued that the Defendant was entitled to a judgment as a matter of law because the jury explicitly found that the Defendant had not committed any discrimination or retaliation. The Court understood the Defendant's statement to be a renewal of its motion for judgment as a matter of law on the Plaintiff's intentional infliction of emotional distress claim, the only claim on which the jury found for the Plaintiff.

### II. LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50(b) is not a freestanding motion for judgment as a matter of law, but is rather a renewed Rule 50(a) motion. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). To move under Rule 50(a), a party must bring the motion before the case is submitted to the jury. *Id.* If the court denies or defers ruling on the Rule 50(a) motion, and the jury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

subsequently returns a verdict against the moving party, the moving party may renew its motion by moving under Rule 50(b). *Id.* A party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).

In ruling on a Rule 50 motion, a court may enter judgment against a party as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party" as to an issue on which that party has been fully heard during trial. Fed. R. Civ. P. 50(a), (b). In making this determination, courts may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Go Daddy*, 581 F.3d at 961. A court "may not substitute its view of the evidence for that of the jury." *Johnson*, 251 F.3d at 1227. "In ruling on the renewed motion [under Rule 50(b)], the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

### III. DISCUSSION

#### A. Judgments on the Verdict

As a preliminary matter, the jury returned a verdict on several causes of action for which the Court will allow judgment on the verdict. The Court allows judgment on the verdict for the following causes of action, with the corresponding jury question that responded to that cause of action:

- First Cause of Action for Discrimination on the Basis of Disability (Question #1)
- Second Cause of Action for Failure to Prevent Discrimination (Question #2)
- Third Cause of Action for Failure to Accommodate Disability (Question #5)
- Fourth Cause of Action for Failure to Engage in the Interactive Process (Question #6)
- Eighth Cause of Action for Interference With Right to Medical Leave (Question #4)
- Ninth Cause of Action for Retaliation for Taking Medical Leave (Question #3)
- Tenth Cause of Action for Discrimination Based on Taking Medical Leave (Question #3)

The Court ENTERS judgment on the above causes of action for the Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

### B. Judgment as a Matter of Law for Fifth and Seventh Causes of Action

As the Court has allowed judgments on the verdict for seven of the Plaintiff's causes of action, three causes of action remain. The Court will enter judgment as a matter of law on all three of those causes of action.

The Plaintiff's fifth cause of action is for wrongful termination in violation of public policy. First Amended Complaint ("FAC"), Dkt. 71, ¶¶ 63-69. The Plaintiff contended that California law prohibited termination on the basis of a disability, and that therefore his discriminatory termination on the basis of his disability constituted a termination in violation of public policy. *Id.* at ¶¶ 64-65. However, the jury explicitly found that the Defendant did not discriminate against the Plaintiff on the basis of his disability, based on its answer to Question #1. Therefore, the Defendant is entitled to judgment as a matter of law on the Plaintiff's fifth cause of action, as there can be no wrongful termination if the termination was not based on disability discrimination. As a result, the Court DIRECTS the entry of judgment as a matter of law for the Defendant on the fifth cause of action.

Next, the Plaintiff has requested entry of judgment on his seventh cause of action for failure to provide employment records on request. Dkt. 122. The Defendant has conceded liability on this cause of action, as it admitted to the Plaintiff's factual allegations in its answer to the FAC. Dkt. 82, ¶¶ 83-84. Additionally, counsel for the Defendant reiterated during trial that it was not contesting the Plaintiff's seventh cause of action and admitted liability on that cause of action only. As a result, the Court DIRECTS the entry of judgment as a matter of law for the Plaintiff on the seventh cause of action. The parties may stipulate to a statutory damages amount along with reasonable costs and fees on this seventh cause of action, or the Plaintiff may bring a properly noticed motion for damages and fees.

### C. Judgment as a Matter of Law on Intentional Infliction of Emotional Distress

The most significant of the Court's findings relates to the Plaintiff's sixth cause of action for intentional infliction of emotional distress ("IIED"). This is the most important finding to the parties because the only question on which the jury answered for the Plaintiff was related to the Plaintiff's IIED claim. However, the jury did not specifically find that the Defendant was liable for IIED. Instead, the Court asked the jury if they found for the Plaintiff on the first two prongs of an IIED claim. The third

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

and fourth prongs of the claim, which relate to the actual severe emotional suffering of the victim and causation, were to be addressed during the damages phases of trial because those prongs would involve testimony regarding the Plaintiff's mental and emotional suffering, a topic the Court explicitly confined to the damages phase of trial.

To prevail on a claim for IIED under California law, a plaintiff must prove: (1) extreme and outrageous conduct; (2) intent to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of emotional distress. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). In order to assess the jury's finding on the first two prongs of the test for IIED and determine whether the claim as a whole should survive, the jury was asked: "The Plaintiff claims that the Defendant committed outrageous conduct[6] and intended to cause him emotional distress or acted with reckless disregard of the probability that the Plaintiff would suffer emotional distress. On this claim, we find for: _____". The jury returned a verdict for the Plaintiff on this question.

### 1.  *Inconsistent Verdicts*

As a preliminary matter, the Court does not find the jury's verdict internally inconsistent. "[W]here inconsistent verdicts are alleged, the test is not whether there was substantial evidence for the jury's conclusion, but whether it is possible to reconcile the verdicts." *Vaughan v. Ricketts*, 950 F.2d 1464, 1470 (9th Cir. 1991). The jury's verdicts are clearly reconcilable, as the jury could rationally find that the Defendant had not discriminated or retaliated against the Plaintiff on the basis of his disability or medical leave, had not failed to accommodate his disability, had not failed to engage in the interactive process, had not interfered with his medical leave, and yet had still committed outrageous conduct. Specifically, a reasonable jury could have answered the questions before it in such a way because the termination of the Plaintiff itself, even without discriminatory or retaliatory motives, could have constituted outrageous conduct in the jury's opinion.

The Plaintiff was hurt while working for Sears and while trying to apprehend a shoplifter of Sears merchandise, which is a part of his job duties and which would presumably help Sears, if he successfully accomplished that goal. Even if the jury found that the Plaintiff had violated a store policy

---

[6] "Outrageous conduct" and other relevant phrases were defined for the jury in the jury instructions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

and was fired because of it,[7] a reasonable jury might still find that firing an employee who had just suffered a severe physical trauma in an attempt to help his employer constituted outrageous conduct. Such a conclusion is further supported by the evidence that the Plaintiff was a model employee with no negative employment history, and he explained the motivation behind his apparent violation of the policy by testifying that he was attempting to ensure the safety of his partner. A jury could reasonably conclude that the Defendant terminated the Plaintiff for violating its boundary policy, but that such termination, under the unique circumstances of this case, constituted outrageous conduct towards the Plaintiff. Thus, the Court does not find that the jury reached inconsistent verdicts, as the verdicts are in fact quite easily reconciled. Indeed, the Court does not see any other possible explanation, rational or otherwise, for the way the jury answered the questions before it.

### 2. *Legal Viability of the Plaintiff's IIED Claim*

However, the jury was not presented with the law regarding the underlying conduct that can legally support an IIED claim, especially within the employment context. Indeed, the jury was merely asked whether the Defendant committed outrageous conduct and whether the Defendant intended to cause emotional distress or acted with reckless disregard of the Plaintiff's emotional distress. In other words, the jury was not asked to determine the legal viability of the Plaintiff's IIED claim, but instead was asked a factual question about its view regarding the Defendant's conduct and intentions. Therefore, the Court finds it appropriate and indeed necessary to apply the jury's factual findings to established law regarding IIED in the employment context.

As a result, the Court now finds that even though the jury considered the Defendant's conduct to be outrageous based on the facts presented to it, the conduct of the Defendant as determined by the jury cannot support an IIED claim as a matter of law for two reasons. For one, under California law the management of personnel cannot qualify as outrageous conduct that can support an IIED claim. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996). The Court did not grant summary judgment on the claim because it found that the discriminatory and retaliatory actions of the Defendant

---

[7] Indeed, the jury necessarily must have found that the Plaintiff violated the boundary policy and was fired for that violation, as it explicitly found that Sears had not committed any unlawful discrimination or retaliation on the basis of disability or medical leave. Discrimination, retaliation, and violation of the boundary policy were the only reasons put forward by either party during trial as the motivation for the Plaintiff's termination, as he had not been subject to any other employment discipline and indeed seemed to be a model employee other than the boundary policy violation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

exceeded simple personnel management, as described in *Janken*. Dkt. 110, 16. Such actions included: (1) unlawful interference with Plaintiff's medical leave by rushing the Plaintiff back to work on the false promise of modified job duties; (2) contacting Plaintiff's doctor directly in violation of Defendant's own policies; (3) exerting pressure on Defendant's doctor to get Plaintiff back to work sooner, leading to Defendant's doctor prematurely removing Plaintiff's cast; and (4) retaliating and discriminating against the Plaintiff based on his disability and on his having to take medical leave.

However, the jury found that the Defendant did not commit any of those actions. It found for the Defendant on the issues of discrimination, retaliation, failure to accommodate a disability, and interference with medical leave. The only remaining action taken by the Defendant was the Plaintiff's termination, which is indeed quite clearly an act of personnel management. Therefore, as a matter of California state law, the Defendant's conduct, as determined by the jury's verdict on the remaining questions, constituted personnel management and therefore cannot legally sustain an IIED claim, even though the jury found the termination outrageous..

A second reason why judgment must be entered as a matter of law for the Defendant is that the Workers' Compensation Act ("WCA") precludes the Plaintiff's IIED claim. The WCA provides that it is "the sole and exclusive remedy for the employee" for all injuries "arising out of and in the course of employment." Cal. Lab. Code §§ 3600(a), 3602(a); *Fermino v. Fedco., Inc.*, 7 Cal. 4th 701, 713 (1994) ("[I]f the everyday actions of employment were in fact carried out in a manner deliberately intended to cause the employee harm, then the injured employee could arguably claim a right to extra compensation under section 4553, but could not initiate a civil action."); *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal. 3d 148, 160 (1987) ("An employee suffering emotional distress … may not avoid the exclusive remedy provisions of the [WCA] by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.").

The Court originally denied the Defendant summary judgment on the IIED claim despite the exclusivity provision of the WCA because discriminatory practices do not fit within the normal course of the employer-employee relationship and therefore are not subject to the workers' compensation exclusivity provision. Dkt. 110, 17 (citing *Rojo v. Kliger*, 52 Cal.3d 65, 81 (1990) (stating that an employer's discriminatory actions may constitute outrageous conduct redressable under a theory of intentional infliction of emotional distress); *Murray v. Oceanside Unified School Dist.*, 79 Cal. App. 4th 1338, 1362 (2000) ("The Legislature, however, did not intend that an employer be allowed to raise the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

exclusivity rule for the purpose of deflecting a claim of discriminatory practices. Thus, a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices.") (citing *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 352-353 (1993)) (emphasis in original omitted)).

However, the jury in this case clearly and explicitly found that the Defendant did not commit any discriminatory practices. Thus, the Plaintiff's basis for his IIED claim is simply his termination, which clearly fits within the normal course of the employer-employee relationship. Thus, this Court is bound by the California Supreme Court's finding that an "employee suffering emotional distress … may not avoid the exclusive remedy provisions of the [WCA] by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance." *Cole*, 43 Cal. 3d at 160. As a result, the Plaintiff's sole remedy for his nondiscriminatory termination was a workers' compensation claim, not a civil action.

There is good reason for this limitation. In general, terminations are a normal part of the employment relationship. It is only when such actions violate a fundamental policy of California that they fall outside of the normal part of the employment relationship. *See Fermino*, 7 Cal. 4th at 714. While discrimination may indeed violate such a fundamental policy, being terminated for violating an established store policy that was implemented for the safety of employees cannot be considered outside the scope of the Plaintiff's employment. Without the exclusivity provision, many terminations would give rise to claims for IIED, as many fired employees believe they have been the victim of outrageous conduct, and firing an employee is almost always done with the understanding that it will cause the employee emotional distress. However, without a showing of discriminatory or retaliatory practices, such distress is a part of the normal employment relationship and thus exclusively within the jurisdiction of the workers' compensation framework. As a result, because the jury found no discrimination or retaliation on the part of the Defendant, the Plaintiff's civil action for IIED is barred by the WCA's exclusivity provision.

For the above two reasons, the jury's factual finding regarding the Defendant's outrageous conduct is not sufficient to sustain an IIED claim as a matter of law. This claim is appropriate for judgment as a matter of law because the Court is not making credibility determinations or weighing the evidence. *See Reeves*, 530 U.S. at 150 (2000); *Go Daddy*, 581 F.3d at 961. Indeed, the Court is adopting the exact same view of the evidence as found by the jury in its answers to the other questions

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:16-cv-05982-SVW-GJS | Date | July 13, 2017 |
|---|---|---|---|
| Title | *Daniel Veloz v. Sears, Roebuck and Co.* | | |

before it. *Johnson*, 251 F.3d at 1227. However, based on the jury's findings that the Defendant did not commit any unlawful discrimination, retaliation, or interference, the Plaintiff's IIED claim fails as a matter of law, despite the jury's finding that the Plaintiff's termination constituted outrageous conduct and even adopting a view of the evidence most favorable to the Plaintiff and consistent with the jury's other findings. Thus, the only appropriate action is for the Court to DIRECT entry of judgment as a matter of law for the Defendant on the Plaintiff's sixth cause of action for IIED.

Finally, the Plaintiff raised the argument after the verdict was read that an IIED claim can stand alone absent discrimination or retaliation. This statement is undoubtedly true, as there are many types of conduct that can give rise to an IIED claim in various life contexts. However, this case occurred specifically within the employment context. Termination, absent discrimination or retaliation, cannot sustain an IIED claim as a matter of law, for the two reasons stated above. Thus, the argument that discrimination and retaliation are not the only types of actions that can sustain an IIED claim outside of the employment context is not relevant to the specific circumstances of this case, in which the jury found that the Defendant merely terminated the Plaintiff, but without discriminatory or retaliatory motives. Thus, the argument put forward by the Plaintiff does not affect the Court's above analysis regarding the legal viability of the Plaintiff's IIED claim and decision to direct the entry of judgment as a matter of law for the Defendant on that claim.

### IV. ORDER

For the foregoing reasons, the Court ALLOWS judgment on the verdict for the Defendant on the first, second, third, fourth, eighth, ninth, and tenth causes of action;

The Court DIRECTS the entry of judgment as a matter of law for the Defendant on the fifth and sixth causes of action (the claim for intentional infliction of emotional distress).

The Court DIRECTS the entry of judgment as a matter of law for the Plaintiff on the seventh cause of action for failure to provide employment records upon request. The parties may stipulate to a statutory damages amount along with reasonable costs and fees on this cause of action only, or the Plaintiff may bring a properly noticed motion for a request for damages, costs, and fees.

IT IS SO ORDERED.

Initials of Preparer  PMC